**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| | : | |
| EXXONMOBIL CORPORATION, | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civil Action No. 06-CV-4345 (DMC) |
| | : | |
| INTERNATIONAL BROTHERHOOD | : | |
| OF TEAMSTERS, LOCAL 11, | : | |
| | : | |
| Defendant. | : | |
| | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon cross-motions for summary judgment by Plaintiff ExxonMobil Corporation ("Plaintiff") to vacate an arbitration award and Defendant International Brotherhood of Teamsters, Local 11 ("Defendant") to enforce an arbitration award. Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant's motion for summary judgment to enforce the arbitration award is **granted**; and Plaintiff's motion for summary judgment to vacate the arbitration award is **denied**.

## I.   BACKGROUND

On March 1, 2005, a heavy snowfall occurred at Plaintiff's Edison, New Jersey Synthetics Plant (the "Plant") and covered the grounds with two to three inches of snow. On the morning of March 3, 2005, during the routine morning "Toolbox Talk" in the maintenance shop, one of ExxonMobil's supervisors warned the plant employees not to walk on or over the snow

1

banks or ice that formed as a result of the snowfall from two days earlier.  Margaret Chinery, a long-term Plant maintenance employee, attended the "Toolbox Talk" that morning. After the meeting, Chinery exited the maintenance shop and attempted to cross-over a small snow bank. She slipped and fell on a patch of ice, causing her to break her ankle in several places and miss time from work.

_____After the accident, Plaintiff conducted an investigation of Chinery's actions using the Safety Matrix of the Safety Accountability Guidelines ("Guidelines"). Plaintiff determined that Chinery's conduct amounted to "wilful disregard" of the message relayed to the employees at the "Toolbox Talk" earlier that morning to avoid treading over ice or snow. According to the Safety Matrix, the corresponding penalty for "wilful disregard of procedure/ standard" is termination. Plaintiff, however, took into consideration Chinery's otherwise clean safety record and decided that instead of termination, Chinery would be suspended for three days without pay. On Chinery's behalf, Defendants filed a grievance and demanded arbitration. The parties agreed to have Gerard Scola ("Arbitrator") decide whether, in suspending Chinery for three days without pay, Plaintiff violated the governing ExxonMobil Collective Bargaining Agreement ("CBA").

_____In Arbitrator's June 17, 2006 Opinion and Award, he concluded that Plaintiff's internal Guidelines are to be enforced as part of the parties' CBA and that Plaintiff violated the Guidelines because it did not terminate Chinery's employment for her "wilful deliberate" conduct as called for by the Safety Matrix. Because of this violation, Arbitrator decided that Chinery deserved a remedy to make her "whole." Therefore, Arbitrator awarded her payment for the time she was suspended and expunged any reference to the incident from her file.

## II.   STANDARD OF REVIEW: RULE 56 SUMMARY JUDGMENT

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing that there is no genuine issue of fact.  See id.  "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party."  Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).  However, "[i]n determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp. 2d 807, 815 (D. N.J. 2000) aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D. N.J. 1980)).

## III.   DISCUSSION

American jurisprudence views the arbitration process with great favor. Specifically, the Supreme Court of the United States has long recognized the paramount importance of arbitration

in labor disputes. See Steelworkers v. Am. Mfg. Co., 363 U.S. 564 (1960); Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593 (1960); Steelworkers v. Warrior & Gulf Navigating Co., 363 U.S. 574 (1960). Accordingly, courts generally favor arbitration and uphold arbitration awards and will not interfere with the process for which the parties bargained. See Paperworkers v. Misco, 484 U.S. 29 (1987); Teamsters Local 863 v. Jersey Coast Egg Prods., Inc., 773 F.2d 530, 533 (3d Cir. 1985). The Supreme Court recognized the sanctity of labor arbitrations in Major League Baseball Players Assoc. v. Garvey, wherein the Court recited its longstanding admonition that:

> [C]ourts . . . have no business weighing the merits of the grievance [or] considering whether there is equity in a particular claim. When the judiciary does do, it usurps a function which . . . is entrusted to the arbitration tribunal.

532 U.S. 504, 509-10 (2001) (citations and internal quotations omitted).

### A.   Federal Courts Give Great Deference to an Arbitrator's Judgment and Adhere to a Strong Presumption of Enforcing Arbitration Awards

A court's review of a labor arbitration award is extremely narrow. See Am. Mfg. Co., 363 U.S. at 568; Super Tire Eng'g Co. v. Teamsters Local Union No. 676, 721 F.2d 121, 123-24 (3d Cir. 1983); Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123 (3d Cir. 1969). A court must defer to a labor arbitration award "so long as it draws its essence from the collective bargaining agreement." Enter. Wheel & Car Corp., 363 U.S. at 597. This means that a labor arbitration award will not be set aside merely because an arbitrator erred in applying the law or erred in the finding of facts. See Warehouse Employees Local 169 v. Acme Mkts., Inc., 473 F.Supp. 709, 713 (E.D. Pa. 1979). Therefore, a reviewing court must uphold an arbitration award, unless extreme circumstances warrant otherwise.

4

A federal court may not overrule an arbitrator's decision simply because it differs from its own interpretation of the contract. See Enter. Wheel & Car Corp., 363 U.S. at 597; W.R. Grace & Co. v. Rubber Workers Local Union No. 759, 461 U.S. 757, 764 (1983); Roberts & Schaefter Co. v. United Mine Workers Local 1846, 812 F.2d 883, 885 (3d Cir. 1987). The parties did not contract for the federal courts to resolve their dispute, but rather they contracted with one another to select an impartial arbitrator to render a decision. The court's role is only to make certain that the arbitrator discharged his or her duties without fraud or corruption.  In this regard, a reviewing court is not authorized to reconsider the merits of arbitration awards, absent fraud by the parties or an arbitrator's dishonesty, since it would undermine the federal policy of privately settling labor disputes through arbitration. See Misco, 484 U.S. at 40-41. Similarly, reviewing courts are not authorized to ignore an arbitrator's factual findings, even if they find them improvident. Id.

The Supreme Court and the Third Circuit have held that as long as an arbitrator's award reached under a collective bargaining agreement "draws its essence from the contract and does not simply reflect the arbitrator's own notions of industrial justice," courts are without authority to review the merits. See Misco, 484 U.S. at 36; see also Enter. Wheel & Car Corp., 363 U.S. at 597; Mobil Oil Corp. v. Indep. Oil Workers Union, 679 F.2d 299, 302 (3d Cir.1982); ARCO-Polymers, Inc. v. Local 8-74, 671 F.2d 752, 755 (3d Cir. 1982). A reviewing court does not have authority to vacate an arbitration award, unless it is "convinced that the arbitrator committed serious error as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." Total Warehouse Servs. Corp. v. Int'l Bhd. of Teamsters, Local 830, No. 95-4095, 1995 U.S. Dist. LEXIS 12901, at *10 (E.D. Pa. Sept. 1,

5

1995). Also, a reviewing court cannot vacate an award "simply because it disagrees with the arbitrator's construction of the contract . . . or because it believes its interpretation of the contract is better than that of the arbitrator." Laborers Local 135 v. Util. Line Servs., Inc., No. 98-4993, 1999 U.S. Dist. LEXIS 2450 (E.D. Pa. Feb. 24, 1999). Courts are not charged "to decide the rightness or wrongness of the [arbitrator's] contract interpretation, only whether the [arbitrator's] decision 'draws its essence' from the contract." Recyclers Ins. Group, Ltd. v. Ins. Co. of N. Am., No. 91-503, 1992 U.S. Dist. LEXIS 8731, at *9 (E.D. Pa. June 15, 1992). The Court holds that "the refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements . . . [because] the federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." Warrior & Gulf Navigating Co., 363 U.S. at 596. Therefore, a reviewing court "must accord considerable deference to the arbitrator's judgment." Id. Only where there is "manifest disregard of the collective bargaining agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb an award." Newark Morning Ledger Co. v. Newark Typographical Union, Local 103, 797 F.2d 162, 168 (3d Cir. 1986); see also Sun Petroleum Prods. Co. v. Oil, Chem. and Atomic Workers Int'l Union, Local 8-901, 681 F.2d 924, 926-27 (3d Cir. 1982).

**B.      Defendants Are Entitled to Enforcement of the Arbitration Award Because Plaintiff Failed to Satisfy 9 U.S.C. § 10(a)**

An arbitration award "should only be upset with great hesitation and only where the party attacking it clearly establishes one of the grounds specified in 9 U.S.C. § 10." Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co., 868 F.2d 52, 57 (3d Cir. 1989). Under 9 U.S.C. §

6

10(a), a district court may vacate an arbitration award: (1) where the award was procured by corruption, fraud or undue means; (2) where there was evident partiality or corruption in the arbitrators or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

Plaintiff argues that the Arbitration award should be vacated under § 10(a)(4) because Arbitrator exceeded his authority. When determining whether an arbitrator exceeded his authority, the Third Circuit has applied a two-step process: "(1) we must be able to rationally derive the form of the award either from the agreement between the parties or from their submissions to the arbitrators, and (2) the terms of the arbitral award must not be completely irrational." Sutter v. Oxford Health Plans LLC, 227 Fed. Appx. 135, 138 (3d Cir. 2007); see also Mut. Fire, 868 F.2d at 56. First, when Plaintiff and Defendant went to arbitration, both parties submitted documents for the Arbitrator's review, including the Guidelines that Plaintiff submitted to justify its actions. The Arbitrator had full authority to review the employer-created Guidelines and find them to be safety work rules that related to the CBA. Therefore, he derived the form of the award from the parties' agreement. Second, the terms of the Arbitrator's award are in no way "completely irrational." Plaintiff argues that it is completely irrational for it to be penalized because it exercised leniency in only suspending Chinery when it could have terminated her employment. While Plaintiff may have had good intentions to help Chinery, it

7

does not have the power to choose when or how to apply the Guidelines. Plaintiff violated its own work rules by failing to give Chinery the appropriate penalty on the Safety Matrix that corresponded to "wilful disregard of procedure/standard." The Guidelines did not support Chinery's three day suspension without pay and, therefore, the only way for the Arbitrator to correct Plaintiff's actions was to revoke the penalty wrongly imposed upon Chinery by awarding her payment for the days she was suspended and removing the incident from her record. Plaintiff has failed to satisfy § 10(a)(4) in demonstrating that the Arbitrator exceeded his authority and, therefore, the arbitration award must be enforced.

## IV.   CONCLUSION

For the reasons stated, it is the finding of this Court that Defendant's motion for summary judgment to confirm the arbitration award is granted; and Plaintiff's cross-motion for summary judgment to vacate the arbitration award is denied. An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:        October 23, 2007
Original:    Clerk's Office
cc:          All Counsel of Record
             The Honorable Mark Falk, U.S.M.J.
             File